1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11  ERMA J. ALANIZ,                             2:05-CV-2576-MCE-DAD

12            Plaintiff,

13       v.                                  AMENDED MEMORANDUM AND ORDER

14  ROBERT M. PEPPERCORN, M.D.,
    INC.; ROBERT M. PEPPERCORN,
15
              Defendants.
16
                            ----oo0oo----
17

18       Through the present action, Plaintiff Erma J. Alaniz

19  ("Plaintiff") is seeking redress from Robert M. Peppercorn, M.D.,

20  Inc. ("Employer") and Robert M. Peppercorn, individually ("Dr.

21  Peppercorn") (collectively "Defendants") for alleged

22  discrimination based on sex, sexual harassment and retaliation in

23  violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

24  §§ 2000e, *et seq.* and California's Fair Employment and Housing

25  Act ("FEHA"), Government Code section 12940 *et seq*.  Plaintiff

26  also alleges a cause of action for failure to prevent

27  discrimination and harassment in violation of FEHA, Government

28  Code Section 12940(k).

                                    1

1  Lastly, Plaintiff alleges a common law cause of action for

2  Intentional Infliction of Emotional Distress.[1]  Defendants seek

3  summary judgment on all Plaintiff's claims.  For the reasons set

4  forth below, Defendants' Motion for Summary Judgment is granted

5  in part and denied in part.

6

7                              **BACKGROUND**

8

9      Robert M. Peppercorn, M.D., Inc. is a medical practice that

10  provides dermatological services, skin surgery, cosmetic medical

11  services and skin spa services to members of the public.  Dr.

12  Robert M. Peppercorn, M.D. is the founder and sole shareholder of

13  Robert M. Peppercorn, M.D., Inc.  At all times relevant,

14  Defendant was a 53 year old married man.  Plaintiff in this

15  action, Erma Alaniz, was employed as the office manager of Robert

16  M. Peppercorn, M.D., Inc., from 1993 through her termination in

17  2005.

18      The salient facts of this case surround Dr. Peppercorn's

19  relationship with his 26 year old medical office assistant,

20  Tiffany Rasberry ("Rasberry").  Rasberry first submitted an

21  application to work for Dr. Peppercorn in late 2004.  She was

22  interviewed by both Plaintiff and Dr. Peppercorn and promptly

23  received an offer of employment which she accepted.  Rasberry

24  began working for Dr. Peppercorn in December, 2004.

25  ///

26

27        [1]Because oral argument will not be of material assistance,
    the Court orders this matter submitted on the briefs.  E.D. Cal.
28  Local Rule 78-230(h).

                                  2

1    Shortly after Rasberry's hire, she and Dr. Peppercorn began
2  exhibiting flirtatious conduct in the office.  In particular, Dr.
3  Peppercorn and Rasberry repeatedly touched one another on the
4  hand and arm.  The two were seen standing shoulder to shoulder in
5  the office and had occasional private lunches.  Similarly, Dr.
6  Peppercorn and Rasberry were overheard giggling in an examination
7  room with the door closed.

8    Almost immediately, rumors regarding the relationship
9  between Dr. Peppercorn and Rasberry began to surface.  A number
10 of the employees in the office began to discuss among themselves
11 their perceptions of the nature of the relationship.  Plaintiff,
12 who had worked at Dr. Peppercorn's office for more than a decade,
13 complained to Dr. Peppercorn that several employees believed his
14 relationship with Rasberry was inappropriate given his marriage
15 to Judy Peppercorn ("Mrs. Peppercorn") and their 13 year old
16 daughter.  Dr. Peppercorn responded to the complaints and the
17 workplace discussions by calling meetings and demanding that the
18 employees, including Plaintiff, cease their discussions of his
19 relationship with Rasberry.

20   The cycle of complaints followed by demands that the
21 workplace discussions cease existed unabated for a period of
22 months.  Simultaneously with the foregoing, Mrs. Peppercorn was
23 seeking information from Plaintiff regarding the relationship
24 between Dr. Peppercorn and Rasberry.  Specifically, Mrs.
25 Peppercorn sought and obtained from Plaintiff a security code
26 which allowed access to the office after hours.

27 ///

28 ///

1  Plaintiff provided Mrs. Peppercorn with Rasberry's personnel file
2  and current address which Mrs. Peppercorn used to personally
3  confront Dr. Peppercorn and Rasberry at Rasberry's apartment.  In
4  addition, Plaintiff provided Mrs. Peppercorn a key to the
5  financial files of the business as well as other sensitive
6  information.  That information was disclosed by Plaintiff without
7  the permission of Defendants.

8      Near the end of her employment, Plaintiff disclosed to other
9  employees that she had written a letter of resignation and had
10  job interviews.  Upon learning from Lori Barnette ("Barnette")
11  that Plaintiff had circulated her plans to resign to other
12  employees, Dr. Peppercorn warned Plaintiff her disclosure was
13  unprofessional.  Plaintiff, in turn, confronted Barnette about
14  disclosing Plaintiff's planned resignation to Dr. Peppercorn.
15  Barnette then alerted Dr. Peppercorn to the confrontation.
16  Ultimately, Dr. Peppercorn, Barnette and Plaintiff met to discuss
17  the issues.  Dr. Peppercorn first indicated his dissatisfaction
18  with Plaintiff's unprofessionalism.  He then pressed Plaintiff
19  regarding which employees had complained to her regarding his
20  relationship with Rasberry.  Plaintiff refused to identify those
21  employees that had confided in her.  Dr. Peppercorn became
22  increasingly angry over her refusal to answer his questions and,
23  ultimately, terminated Plaintiff's employment.

24      It is undisputed that Dr. Peppercorn bestowed gifts on
25  Rasberry including flowers, cash, a computer, furniture, a credit
26  card, meals and entertainment.  In addition, Dr. Peppercorn paid
27  Rasberry her full salary and medical benefits for a period of
28  seven months subsequent to her resignation.

4

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); *see also Allstate Ins. Co. v. Madan*, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); *France Stone Co., Inc. v. Charter Twp. of Monroe*, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  *See* Fed. R. Civ. P. 56(a), 56(c); *Mora v. ChemTronics*, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. at 323 (quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251-52 (1986); *Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers*, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.

1   Where the record taken as a whole could not lead a rational trier

2   of fact to find for the nonmoving party, there is no 'genuine

3   issue for trial.'" *Matsushita*, 475 U.S. at 586-87.

4         In resolving a summary judgment motion, the evidence of the

5   opposing party is to be believed, and all reasonable inferences

6   that may be drawn from the facts placed before the court must be

7   drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255.

8   Nevertheless, inferences are not drawn out of the air, and it is

9   the opposing party's obligation to produce a factual predicate

10   from which the inference may be drawn. *Richards v. Nielsen*

11   *Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

12   *aff'd*, 810 F.2d 898 (9th Cir. 1987).

13

14                         **ANALYSIS**

15

16         While Plaintiff's Complaint is not entirely clear, the Court

17   finds that Plaintiff presents three theories upon which she

18   contends relief is warranted: (1) disparate treatment

19   discrimination in the form of favoritism; (2) harassment in the

20   form of a hostile work environment; and (3) retaliation.[2]

21   Plaintiff has made the foregoing allegations based on both Title

22   VII as well as California's FEHA.

23   ///

24   ///

25 ──────────────

26       [2]Both Federal courts as well as California courts have
adopted similar standards for discrimination claims, hostile work
environment sexual harassment claims and retaliation claims under

27   FEHA. (See, e.g., *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.
App. 3d 590, 608 (1989); *Lyle v. Warner Bros. TV Prods.*, 38 Cal.

28   4th 264, 279 (2006).

1    Discrimination on the basis of sex is prohibited under both
2   Title VII and California's FEHA.  Specifically, Title VII of the
3   Civil Rights Act makes it illegal for an employer "to
4   discriminate against any individual with respect to his
5   compensation, terms, conditions, or privileges of employment,
6   because of such individual's ... sex."  42 U.S.C. §
7   2000e-2(a)(1).  A plaintiff may show a violation of this statute
8   by proving disparate treatment, disparate impact or the existence
9   of a hostile work environment.  *Sischo-Nownejad v. Merced Comm.*
10  *Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991).

11    Under the *McDonnell Douglas* test for Title VII and FEHA
12  discrimination claims, the plaintiff can establish a prima facie
13  case by showing: (1) she belongs to a protected class, (2) she
14  was performing according to her employer's legitimate
15  expectations, (3) she suffered an adverse employment action, and
16  (4) some other circumstance indicates a discriminatory motive,
17  such as similarly qualified individuals being treated more
18  favorably.  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-
19  803, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *see also Godwin v.*
20  *Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).  Once
21  plaintiff establishes a prima facie case of discrimination, the
22  burden shifts to defendant to articulate a legitimate
23  nondiscriminatory reason for the termination.  *McDonnell Douglas,*
24  411 U.S. at 802-803.  If defendant meets this burden of
25  production, the burden shifts back to plaintiff to establish that
26  defendant's proffered reason was a pretext for discrimination.
27  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).
28  ///

1   "The ultimate burden of persuading the trier of fact that the

2   defendant intentionally discriminated against the plaintiff

3   remains at all times with the plaintiff." *Id.*  Moreover, "the

4   amount that must be produced in order to create a prima facie

5   case is very little."  *Sischo-Nownejad*, 934 F.2d at 1111.

6

7   **I.   Discrimination**

8

9        Plaintiff argues she suffered discrimination on the basis of

10  her sex.  Her theory is that Dr. Peppercorn's romantic

11  relationship with Rasberry resulted in Rasberry receiving

12  numerous gifts and benefits of employment not accorded Plaintiff.

13  The viability of this claim depends on the so-called "paramour"

14  theory of gender discrimination.  More precisely, this claim

15  advances the theory that a supervisor's relationship with a co-

16  worker coupled with favoritism can constitute discrimination.

17       There is an uneven split in the circuits regarding the

18  validity of this theory.  One District of Columbia Court tacitly

19  endorsed this theory in dicta.  *See King v. Palmer,* (D.C. Cir.

20  1985) (stating that "unlawful sexual discrimination occurs

21  whenever sex is for no legitimate reason a substantial factor in

22  the discrimination.")  Aside from this one decision, however,

23  "every other federal court which has considered the propriety of

24  the 'paramour' theory has rejected it as a Title VII cause of

25  action."  *Alberto v. Bank of Am.*, 1995 U.S. Dist. LEXIS 13520,

26  1995 WL 562170, *4 (N.D. Cal. 1995) (citing *DeCinto v.

27  Westchester County Med. Ctr.*, 807 F.2d 304 (2d Cir. 1986));

28  *Becerra v. Dalton*, 94 F.3d 145, 149-50 (4th Cir. 1996);

*Ackel v. Nat'l Communs., Inc.*, 339 F.3d 376, 382 (5th Cir. 2003);
*Schobert v. Illinois Dept. of Transp.*, 304 F.3d 725, 733 (7th
Cir. 2002) (Title VII does not prevent employers from favoring
employees because of personal relationships); *Tenge v. Phillips
Modern Ag. Co.*, 446 F.3d 903 (8th Cir. 2006) (Termination of an
employee based on the employee's consensual sexual conduct with a
supervisor is not a violation of Title VII); *Taken v. Oklahoma
Corp. Comm'n*, 125 F.3d 1366, 1370 (10th Cir. 1997); *Womack v.
Runyon*, 147 F.3d 1298, 1300 (11th Cir. 1998); *see also Candelore
v. Clark County Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir.
1992) ("A co-worker's romantic involvement with a supervisor does
not by itself create a hostile work environment").  Each of these
courts reason that "[w]hen an employer discriminates in favor of
a paramour, such an action is not sex-based discrimination, as
the favoritism, while unfair, disadvantages both sexes alike for
reasons other than gender."  *Ackel*, 335 F.3d at 382 (citing *Green
v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 656 n.6 (5th
Cir. 2002)).

Here, like in the foregoing cases, Plaintiff was not treated
disparately based on her gender.  Rather, any advantages given
Rasberry were solely based on the relationship between she and
Dr. Peppercorn.  Plaintiff does not claim she suffered any other
type of gender based discrimination.  Given these facts as well
as the overwhelming weight of authority cited above, the Court
finds Plaintiff's claims of disparate treatment based on
favoritism under Title VII and FEHA fail as a matter of law.

///

///

10

## II.  Hostile Work Environment

Plaintiff further argues she was subjected to a hostile work environment because of Dr. Peppercorn's romantic relationship with Rasberry.  To prevail on this claim of sexual harassment, Plaintiff must show that (1) she was subjected to verbal or physical conduct because of her gender; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive work environment.  *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995).  The analysis here is both objective and subjective: "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993).  "Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation."  *Id.*

As discussed supra, almost every circuit to decide whether a workplace affair creates a harassing environment has declined to so find.  Nonetheless, Plaintiff claims that the California Supreme Court's recent decision in *Miller v. Dep't of Corrections*, is to the contrary.  36 Cal.4th 446 (2005).  In support of her position, Plaintiff points to the *Miller* court's conclusion that:

///

11

[A]lthough an isolated instance of favoritism on the part of a supervisor toward a female employee with whom the supervisor is conducting a consensual sexual affair ordinarily would not constitute sexual harassment, when such sexual favoritism in a workplace is sufficiently widespread it may create an actionable hostile work environment in which the demeaning message is conveyed to female employees that they are viewed by management as sexual playthings' or that the way required for women to get ahead in the workplace is by engaging in sexual conduct with their supervisors or the management.

*Id.* at 451.

While the foregoing holding clearly permits a claim under California law for hostile work environment based on favoritism, that holding requires more than the mere existence of an interoffice romance. Specifically, in *Miller*, there was "widespread" sexual conduct in the form of three simultaneous and open affairs with significant favoritism that permeated the working environment. That favoritism involved unfettered abuse and harassment against both plaintiffs by one of her supervisor's paramours, flagrant boasting by the favored women, eyewitness accounts of public fondling, admissions by the supervisor that he could not control his paramours based on the sexual relationship between them, and repeated promotions based on sexual favors rather than on qualifications. *Id.* at 471.

In stark contrast, aside from the evidence showing Dr. Peppercorn showered Rasberry with gifts, none of the types of favoritism shown in *Miller* is evidenced here. More specifically, Plaintiff does not allege she was denied promotions or suffered other losses of employment benefits.

///

///

12

There is no allegation in the record that Rasberry abused Plaintiff or any other employee nor is there any evidence that Rasberry flaunted her relationship with Dr. Peppercorn.  In addition, while there were incidents of Dr. Peppercorn and Rasberry behaving flirtatiously, there is no allegation the two engaged in public fondling of the sort that existed in *Miller*. Dr. Peppercorn did not accede he could not control Rasberry based on the alleged affair and, in fact, Rasberry resigned her position in an effort to abate the rising tide of rumors.

In sum, *Miller* explicitly distinguished a case like the one here in which there is an isolated workplace sexual affair coupled with the presence of mere office gossip.  *Id.* at 470-71. The Court finds the record lacking in evidence that would lead a reasonable trier of fact to conclude the commonplace office romance between Dr. Peppercorn and Rasberry sent the message that women were "sexual playthings," or that engaging in sexual conduct with supervisors was the only vehicle for advancement. Accordingly, the Court grants Defendants' Motion for Summary Judgment on Plaintiffs' Title VII and FEHA hostile work environment claims.

///
///
///
///
///
///
///
///

13

**III.  Retaliation**

    **A.  Prima Facie Case**

Plaintiff claims her termination was retaliatory in violation of Title VII as well as FEHA.  In order to establish a claim of retaliation thereunder, the plaintiff must demonstrate (1) that she engaged in a protected activity; (2) that her employer was aware of the activity; (3) that she suffered an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action.  *Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003); *see also Yanowitz v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028, 1042 (2005).

Plaintiff alleges her termination was retaliatory.  In order to proceed on this claim, she must first allege she engaged in a protected activity of which her employer was aware.  Plaintiff avers, and the Court agrees, her complaints to Dr. Peppercorn himself regarding the alleged affair were a protected activity for purposes of her retaliation claim.

An employee's conduct may constitute protected activity for purposes of a retaliation claim not only when the employee opposes conduct that ultimately is determined to be unlawful, but also when the employee opposes conduct that the employee reasonably and in good faith believes is unlawful, whether or not that belief is ultimately borne out.  *Yanowitz*, 36 Cal. 4th 1043 (internal citations omitted).

///

14

While the Court has found Plaintiff cannot proceed on her claims of discrimination nor hostile work environment, that fact alone does not defeat her claim that she reasonably believed she was opposing unlawful conduct.  In fact, taking all inferences in favor of Plaintiff, the Court finds she was engaged in protected activity for purposes of this retaliation claim.

Neither party contends, nor could they, that Plaintiff did not suffer an adverse employment action.  To be sure, Plaintiff's termination constitutes adverse employment action.  *See e.g. Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004). The salient inquiry, however, is whether Plaintiff's termination is causally related to her protected activity.  "The causal link between a protected activity and the alleged retaliatory action 'can be inferred from timing alone' when there is a close proximity between the two."  *Id.* (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002)).

Plaintiff alleges she was terminated as a result of her protected activity of complaining regarding the alleged affair. Neither Plaintiff nor Defendants proffer specific evidence regarding the delay between Plaintiff's protected activity and her termination.  Nonetheless, the Court must view the facts before it and draw all reasonable inferences in favor of the non-moving party.  Applying that standard, the Court finds a reasonable inference of causal effect between Plaintiff's termination and her protected activity.

///

///

///

15

1    **B.    Pretext**

2

3         Once an employee establishes a prima facie case, the

4    employer is required to offer a legitimate, non-retaliatory

5    reason for the adverse employment action.  *Brooks v. City of San*

6    *Mateo,* 229 F.3d 917, 928 (9th Cir. 2000)*; Yanowitz*, 36 Cal. 4th

7    1028 (citing *Morgan v. Regents of Univ. of Cal.,* 88 Cal. App. 4th

8    52, 68 (2000)).  If the employer produces a legitimate reason for

9    the adverse employment action, the presumption of retaliation is

10   removed, and the burden shifts back to the employee to prove

11   intentional retaliation.  *Brooks,* 229 F.3d at 928; *Yanowitz*, 36

12   Cal. 4th at 1042 (internal citations and quotations omitted).

13        Defendants allege Plaintiff was fired for divulging

14   sensitive employment data to Dr. Peppercorn's estranged wife as

15   well as for insubordination.  Indeed, Plaintiff admittedly

16   obtained a security code for Mrs. Peppercorn that allowed access

17   to the office after hours.  Plaintiff provided Rasberry's

18   personnel file and current address to Mrs. Peppercorn which Mrs.

19   Peppercorn used to personally confront Dr. Peppercorn and

20   Rasberry at Rasberry's apartment.

21        In addition, Plaintiff disclosed to other employees that she

22   had written a letter of resignation and had job interviews.  Upon

23   learning from Barnette that Plaintiff was circulating her

24   imminent resignation, Dr. Peppercorn told Plaintiff such a

25   disclosure was unprofessional.  Plaintiff, in turn, confronted

26   Barnette about disclosing her plans to Dr. Peppercorn.  Barnette

27   then alerted Dr. Peppercorn to the confrontation.

28   ///

16

1   Ultimately, Dr. Peppercorn, Barnette and Plaintiff met to discuss
2   the issues.  Dr. Peppercorn first indicated his dissatisfaction
3   with Plaintiff's unprofessionalism.  He then pressed Plaintiff
4   regarding which employees had complained to her regarding the
5   alleged affair with Rasberry.  Plaintiff refused to identify
6   those employees that had confided in her.  Dr. Peppercorn became
7   increasingly angry over her steadfast refusal to answer his
8   questions and, finally, terminated Plaintiff's employment.

9       The foregoing legitimate explanations for Plaintiff's
10  termination satisfy Defendants' burden that it's employment
11  decision was lawful.  Accordingly, the presumption of retaliation
12  drops from the case and the burden shifts back to Plaintiff to
13  introduce evidence from which the Court could conclude that
14  Defendants' proffered explanation was pretextual.  *See Texas*
15  *Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 n. 10
16  (1981).

17      Plaintiff has provided uncontroverted evidence that she
18  complained of the alleged affair and its vexing effect on her
19  working environment.  She further provided evidence that her
20  termination was proximately related to those complaints.
21  Analyzed as either a straightforward "pretext" case or a mixed
22  motives case, the record reveals that it is probable that
23  Plaintiff's protected activity motivated, at least in part,
24  Defendants' decision to terminate her.  Whether or not one
25  accepts Defendants' explanations for terminating Plaintiff, one
26  cannot ignore the evidence, albeit circumstantial, that
27  Plaintiff's complaints about the alleged affair played some role
28  in her termination.

17

Given this finding, Plaintiff is entitled to a trial on these claims for retaliatory discharge in violation of Title VII and FEHA.  Accordingly, Defendants' Motion for Summary Judgment on this claim is denied.

**IV.  Failure to Prevent Harassment**

Plaintiff's fourth cause of action prays for relief for her employer's "failure to take reasonable steps to prevent discrimination and harassment from occurring in violation of FEHA" under section 12900, *et seq.*  FEHA makes it unlawful "for an employer ... to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Cal. Gov't Code § 12940(k).

The California Supreme Court has stated that FEHA "makes it a separate unlawful employment practice" for an employer to violate section 12940(k).  *State Dept. of Health Servs. v. Super. Ct.*, 31 Cal. 4th 1026, 6 Cal. Rptr. 3d 441 (2003).  Numerous other California courts have recognized a separate cause of action against an employer for failure to investigate or take reasonable steps to prevent harassment or discrimination under section 12940(k).  *See, e.g., Tritchler v. County of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2003) (holding the district court did not abuse its discretion in requiring a finding of actual discrimination before a violation of section 12940(k) becomes actionable) (citing *Trujillo v. North County Transit Dist.*, 63 Cal. App. 4th 280, 283-84, 73 Cal. Rptr. 2d 596 (1998));
///

*Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*, 103 Cal. App. 4th 1021, 1035, 127 Cal. Rptr. 2d 285 (2002) ("Prompt investigation of a discrimination claim is a necessary step by which an employer meets its obligation [under section 12940(k)]").

While Defendants did not argue their rationale for why this claim should be summarily adjudicated, the Court finds that *Trujillo* "does not provide for a right of action in a tort claim in absence of a showing that the plaintiff has, in fact, been the victim of discrimination." In fact, both *Trujillo* and *Tritchler* require findings of actual discrimination or harassment before a plaintiff has a successful claim for failure to take reasonable steps to prevent the same under section 12940(k). *Tritchler*, 358 F.3d at 1155; *Trujillo*, 63 Cal. App. 4th at 284. Given that the Court has dismissed both these claims, no claim under Section 12940(k) for either discrimination or harassment can survive.

Despite the foregoing conclusion, the Court finds Plaintiff's section 12940(k) claim based on a failure to prevent retaliation may proceed. Specifically, the two courts that have analyzed the question of whether section 12940(k) permits a claim for failure to prevent or investigate discrimination, when only a retaliation claim survives, have found in the affirmative. *See Giovannetti v. Trs. of the Cal. State Univ.,* 2006 U.S. Dist. LEXIS 41750 *28-29 (2006); *Taylor v. City of L.A. Dept. of Water & Power*, 144 Cal. App. 4th 1216 (2006).

///

///

///

19

In *Taylor* the Court found it more reasonable to conclude that the Legislature intended to extend "a comparable degree of protection both to employees who are subject to the types of basic forms of discrimination at which the FEHA is directed--that is, for example, discrimination on the basis of race or sex--and to employees who are discriminated against in retaliation for opposing such discrimination, rather than to interpret the statutory scheme as affording a greater degree of protection against improper retaliation than is afforded against direct discrimination." *Taylor*, 144 Cal. App. 4th at 1240.  This Court agrees.  Defendants' Motion for Summary Judgment on Plaintiff's section 12940(k) claim based on failure to prevent retaliation is denied.

**V.   Intentional Infliction of Emotional Distress**

     Under California law, the elements of intentional infliction of emotional distress are as follows: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct. *Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903, 820 P.2d 181, 202, 2 Cal. Rptr. 2d 79, 81 (1991).  "Conduct is deemed outrageous if it is 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.'"  *Saridakis v. United Airlines*, 166 F.3d 1272, 1278 (9th Cir. 1999).

1  Plaintiff's opposition to the present Motion states merely

2  that she "presents a substantial amount of evidence establishing

3  each of these elements."  However, a thorough review of the

4  record by this Court fails to reveal such evidence.  In fact, the

5  Court finds no evidence that the conduct on the part of Dr.

6  Peppercorn vis-a-vis Plaintiff could be characterized as so

7  extreme it exceeds all bounds of human decency.  *See Schneider v.*

8  *TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991) (affirming summary

9  judgment when incidents in which supervisor made threatening

10 gestures and screamed at employee while criticizing her showed

11 rudeness and insensitivity, but did not amount to outrageous

12 conduct); *Yurick v. Super. Ct.*, 209 Cal. App. 3d 1116, 257 Cal.

13 Rptr. 665, 671 (Ct. App. 1989) (summary judgment appropriate when

14 employer's alleged conduct and discriminatory remarks, while

15 offensive and in breach of the common standards of civility, were

16 not so egregious as to give rise to an actionable claim); *Trerice*

17 *v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 257 Cal. Rptr. 338,

18 340 (Ct. App. 1989) (finding employer's poor handling of

19 plaintiff's termination did not qualify, as a matter of law, as

20 outrageous conduct).

21 Here, while there is no question Dr. Peppercorn could have

22 used better judgment in the course of dealing with his employees,

23 he cannot be said to have acted beyond all bounds tolerated in

24 society with respect to his treatment of Plaintiff.  Accordingly,

25 Defendants' Motion for Summary Judgment as to Plaintiff's claim

26 for intentional infliction of emotional distress is granted.

27 ///

28 ///

21

## VI.  Punitive Damages

In California, a plaintiff can recover punitive damages only if he proffers, by clear and convincing evidence, that the defendant "has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a).

Defendants contend Plaintiff may not seek punitive damages because there is no evidence in the record of oppression or malice towards Plaintiff.  Whether Defendants' conduct was oppressive or malicious is not an issue of law, but rather an issue of fact inappropriate for disposition on a Motion for Summary Judgment.  Accordingly, Defendants' Motion for Summary Judgment as to punitive damages is denied.

### CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's claims for discrimination, hostile work environment and intentional infliction of emotional distress.  Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's claims for retaliation, failure to prevent retaliation and punitive damages.

IT IS SO ORDERED.

Dated: May 4, 2007

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

22